IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

EZEQUIEL BAHENA,

    Plaintiff,

v.

JEREMY SUGAI, and
JOSHUA CURTIS,

    Defendants.

**COMPLAINT AND JURY DEMAND**

Plaintiff, Ezequiel Bahena, by and through his attorneys of the Civil Rights Litigation Group, PLLC, hereby submits this Complaint and Jury Demand, and alleges as follows:

**INTRODUCTION**

1. This is a civil rights case involving the unlawful arrest of Ezequiel Bahena, who was arrested for driving under the influence despite having no drugs or alcohol in his system and showing no signs of intoxication during the voluntary roadside maneuvers. After initiating a traffic stop for allegedly weaving across a lane, Defendant Trooper Sugai of the Colorado State Patrol unreasonably profiled Mr. Bahena and immediately began accusing him of having a warrant, transporting drugs, and being "hyped up" on some time of drug. Within minutes of the stop, Defendant Sugai requested a police canine to unjustifiably extend the traffic stop and search Mr. Bahena's vehicle.

2. Mr. Bahena's first language is Spanish, and he speaks limited English with a heavy accent. Despite knowing his limitations with the English language, Defendants ridiculed him for

not speaking English and repeatedly made comments such as, "We're going to do this in English" and "You're going to speak English" and "Stop speaking Spanish." Defendants told Mr. Bahena that his insistence on speaking Spanish was merely him being "obstinate" – a word that Mr. Bahena clearly did not understand.

3.      During the four hours after the traffic stop, Defendants ran Mr. Bahena through a gauntlet of tests in an attempt to substantiate the unfounded belief that he was intoxicated. Mr. Bahena blew "0.00" on two breathalyzer tests, took a blood test, passed the voluntary roadside sobriety tests, and completed the Drug Recognition Evaluation (by Defendant Curtis) without any indicators of intoxication. Despite the abundant, overwhelming evidence that Mr. Bahena was perfectly sober, Defendants proceeded with the unreasonable belief that Mr. Bahena was driving while under the influence. Defendant Sugai conducted a warrantless arrest and submitted the probable cause affidavit to the court, which relied on Defendant Curtis' false statements and unreasonable assertions.

4.      Mr. Bahena seeks justice for the dignitary, economic, physical, and emotional injuries he suffered as a result of the unlawful arrest and wrongful prosecution. Additionally, Mr. Bahena seeks punitive sanctions against Defendants Sugai and Curtis to punish them for their callous disregard of his Constitutional rights and to deter them from this type of misconduct in the future.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction of the federal claims pursuant to 28 U.S.C. §1331.

6.      This Court has supplemental subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because all the events alleged herein occurred in the State of Colorado.

8. Jurisdiction supporting the Plaintiff's claim for attorney's fees and costs is conferred by 42 U.S.C. §1988 and C.R.S. § 13-21-131(3).

## PARTIES

9. Plaintiff Ezequiel Bahena was at all times relevant to the claims set forth herein a resident of the State of Colorado.

10. Defendant Jeremy Sugai was, at all times relevant to the claims in this action, employed as a police officer with the Colorado State Patrol, and acted under color of state law. He is identified in his individual capacity.

11. Defendant Joshua Curtis was, at all times relevant to the claims in this action, employed as police officer with the Colorado State Patrol, and acted under color of state law. He is identified in his individual capacity.

12. Plaintiff's federal claims are brought pursuant to 42 U.S.C. §1983 and the Constitution of the United States.

13. Plaintiff's state law claims are brought pursuant to C.R.S. § 13-21-131 and the Colorado Constitution.

## BACKGROUND FACTS

14. Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

15. On July 31, 2021, at approximately 2:00 a.m., Defendant Sugai initiated a traffic stop of Mr. Bahena's vehicle due to him allegedly weaving across the traffic lane.

16. Mr. Bahena's primary language is Spanish, and he speaks/understands very limited English.

17. Defendant Sugai approached Mr. Bahena's vehicle to make contact with him.

18. Mr. Bahena spoke to Defendant Sugai with a heavy accent.

19. Almost immediately after contacting Mr. Bahena, Defendant Sugai accused Mr. Bahena of being on drugs and transporting drugs.

20. Defendant Sugai had no prior experience interacting with Mr. Bahena and had no reason to believe Mr. Bahena's speech was abnormal.

21. Defendant Sugai confirmed that Mr. Bahena's pupils appeared normal.

22. Throughout the interaction, Mr. Bahena never exhibited slurred speech.

23. Within a few minutes of contacting Mr. Bahena, Defendant Sugai requested a police canine on scene.

24. When Defendant Sugai requested the police canine, he had no information suggesting that Mr. Bahena possessed drugs or anything unlawful that a police canine could detect.

25. Defendant Sugai stated that he did not suspect Mr. Bahena of being under the influence of alcohol.

26. Defendant Sugai stated that he suspected Mr. Bahena had drugs in the vehicle because when Sugai asked Bahena if he had drugs in the vehicle, Bahena became nervous and said, "No, that offends me."

27. Defendant Sugai told other officers that Mr. Bahena was "hyped up," but the officers agreed that the energy drink in Mr. Bahena's vehicle – which he admitted to consuming recently – was likely the reason for Mr. Bahena's energetic demeanor.

28. Defendant Sugai asked Mr. Bahena to exit the vehicle, and Mr. Bahena complied.

4

29. Mr. Bahena exited the vehicle without any assistance.

30. While exiting the vehicle, Mr. Bahena did not show any signs of balance issues, such as swaying or stumbling.

31. Defendant Sugai requested that Mr. Bahena perform voluntary roadside sobriety tests, and Mr. Bahena agreed.

32. Because of Mr. Bahena's obvious lack of English fluency, he had to ask Defendant Sugai to repeat the instructions on multiple occasions.

33. Defendants spoke to Mr. Bahena only in English during the entire incident.

34. During the roadside sobriety tests, Mr. Bahena performed as a sober person would.

35. For example, during the heel-to-toe walk, Mr. Bahena did not stumble, sway, or otherwise exhibit any signs of intoxication.

36. After completing the roadside sobriety tests, Defendant Sugai ordered Mr. Bahena to take a breathalyzer test.

37. Defendant Sugai did not advise Mr. Bahena of Colorado's Express Consent law prior to administering the breathalyzer.

38. Defendant Sugai did not give Mr. Bahena the option of either taking a breathalyzer or chemical blood test.

39. Defendant Sugai administered a breathalyzer test to Mr. Bahena, despite stating that he did not suspect Mr. Bahena of alcohol intoxication.

40. The result of the breathalyzer showed a 0.000 blood alcohol content.

41. After the breathalyzer showed no alcohol in Mr. Bahena's system, Defendant Sugai stated again that he did not suspect Mr. Bahena of consuming alcohol; rather, he stated he suspected Mr. Bahena of being on drugs.

42. Despite passing the roadside sobriety tests and the breathalyzer test, Defendant Sugai immediately put Mr. Bahena in handcuffs and arrested him for Driving Under the Influence.

43. After arresting Mr. Bahena, Defendant Sugai took him to the hospital and ordered him to take a blood test.

44. Defendant Sugai then transported Mr. Bahena to the police station in order to complete another round of tests by a Drug Recognition Expert, Defendant Curtis.

45. Once at the police station, Defendants Sugai and Curtis repeatedly ridiculed Mr. Bahena for not speaking English.

46. While attempting to explain the charges and the *Miranda* warning, Defendants told Mr. Bahena, "We're going to do this in English" and "You're going to speak English" and "Stop speaking Spanish!"

47. Defendants told Mr. Bahena that his insistence on speaking Spanish was merely him being "obstinate" – a word that Mr. Bahena clearly did not understand.

48. Defendants demanded that Mr. Bahena read the *Miranda* warning out loud in English, despite his clear inability to do so.

49. Defendant Curtis told Mr. Bahena that he considered Mr. Bahena's inability to speak English as a refusal and would simply take him to jail for not cooperating.

50. Mr. Bahena struggled to understand the *Miranda* warning for at least twenty minutes.

51. Mr. Bahena stated multiple times that he did not understand the meaning of the *Miranda* warning.

52. Defendant Curtis knew that Mr. Bahena did not understand the *Miranda* warning when Defendant Curtis read the advisement out loud in English.

53. After at least thirty minutes of ridiculing Mr. Bahena for not speaking English, Defendant Curtis completed a second round of sobriety tests (i.e., the same tests conducted roadside by Defendant Sugai) and a second breathalyzer test.

54. During the second round of sobriety tests, Mr. Bahena again performed as a sober person would.

55. Defendant Curtis administered a second breathalyzer, which again showed 0.000 blood alcohol content.

56. At this point, it was approximately 5:00 a.m. Three hours had passed since the initial traffic stop.

57. Mr. Bahena's eyes were not bloodshot and his speech was not slurred.

58. While performing the second round of sobriety tests, Mr. Bahena, again, was able to remain standing without swaying or exhibiting balance issues.

59. Defendant Curtis confirmed the following information during the second round of sobriety tests:

- Mr. Bahena's pupils appeared normal;
- Mr. Bahena's pupils had no rebound dilation;[1]
- Mr. Bahena was not exhibiting Vertical Gaze Nystagmus;[2]
- Mr. Bahena's heart rate was within normal range;
- Mr. Bahena showed no signs of drug ingestion;

---

[1] "Rebound dilation" is defined as a period of pupillary constriction followed by a period of pupillary dilation where the pupil steadily increases in size and does not return to its original constricted size. Rebound dilation occurs with persons impaired by drugs that cause pupillary dilation, including cannabis.

[2] Vertical Gaze Nystagmus is an up and down jerking of the eyes which occurs when the eyes gaze upward at maximum elevation. The presence of this type of nystagmus is associated with high doses of alcohol and certain other drugs. The drugs that cause Vertical Gaze Nystagmus are the same ones that cause Horizontal Gaze Nystagmus.

60. A reasonable officer would have viewed this information as confirmation that Mr. Bahena was not intoxicated.

61. None of this exculpatory evidence was included in the warrantless arrest affidavit.

62. Despite clear evidence that Mr. Bahena was not intoxicated, Defendant Curtis unreasonably concluded that Mr. Bahena was under the influence of a Central Nervous System depressant.

63. After completing the four-hour gauntlet of sobriety tests, Defendants proceeded to book Mr. Bahena in the jail under charges of DUI.

64. Mr. Bahena spent three days in jail before being released.

65. When Mr. Bahena was released from jail, he was thousands of miles away from his closest friend or relative.

66. Because Mr. Bahena does not live in Colorado, his sister had to drive from Florida to Colorado to pick him up and drive him back to North Carolina.

67. When Mr. Bahena received the results of his chemical blood test a few weeks later, it showed no drugs or alcohol in his system.

68. On September 22, 2021, the charges against Mr. Bahena were dismissed.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983, Fourth Amendment**
**C.R.S. § 13-21-131, Colo. Con. Art. II, § 7**
*Unlawful Arrest*
*(Against Defendant Sugai)*

69. Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

70. Defendant Sugai initiated a traffic stop of Mr. Bahena's vehicle.

8

71. Almost immediately upon making contact with him, Defendant Sugai asserted that Mr. Bahena was "hyped up," talking fast, and appeared to be under the influence of a stimulant.

72. Defendant Sugai observed an energy drink in Mr. Bahena's vehicle, and fellow officers explained that the energy drink was the likely cause of his energetic demeanor.

73. Before requesting any sobriety tests, Defendant Sugai observed that Mr. Bahena's eyes were not bloodshot and his pupils appeared normal.

74. Defendant Sugai observed that Mr. Bahena was not slurring his words and had no problem maintaining his balance.

75. At no point did Mr. Bahena stumble, sway, or use the vehicle as support to remain standing.

76. Defendant Sugai stated that he did not suspect Mr. Bahena of alcohol intoxication.

77. During the roadside sobriety tests, Mr. Bahena performed as a sober person would.

78. For example, during the heel-to-toe walk, Mr. Bahena did not stumble, sway, or otherwise exhibit any signs of intoxication.

79. Because Mr. Bahena is not fluent in English, he had to ask Defendant Sugai to repeat the instructions multiple times.

80. Defendant Sugai unreasonably interpreted issues related to the language barrier as signs of intoxication. For example, Defendant Sugai reported that Mr. Bahena counted to 67 instead of 57 and used that discrepancy as a sign of intoxication.

81. Despite the fact that Mr. Bahena was not suspected of alcohol intoxication, Defendant Sugai ordered Mr. Bahena to take a breathalyzer test.

82. The result of the breathalyzer showed a 0.000 blood alcohol content.

83. Defendant Sugai placed Mr. Bahena in handcuffs immediately after he passed the breathalyzer test, and arrested him for Driving Under the Influence.

84. Any reasonably well-trained officer would have known that Mr. Bahena was not intoxicated.

85. Defendant Sugai knew or should have known that he did not have probable cause to arrest Mr. Bahena for DUI.

86. The actions described herein of Defendant Sugai, while acting under color of state law, deprived Mr. Bahena of the rights, privileges, liberties, and immunities secured by the Fourth Amendment to the Constitution of the United States of America and Article II, §7 of the Colorado Constitution. These deprivations caused Mr. Bahena to suffer lost liberty, physical injury, reputational injuries, economic loss, and the damages that flowed therefrom.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983, Fourth Amendment**
**C.R.S. § 13-21-131, Colo. Con. Art. II, § 7**
*Malicious Prosecution*
*(Against All Defendant)*

87. Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

88. Defendant Sugai arrested Mr. Bahena for Driving Under the Influence.

89. Defendant Sugai caused Mr. Bahena's prosecution and continued confinement when he submitted a materially false warrantless arrest affidavit asserting that Mr. Bahena was driving while under the influence of drugs or alcohol.

90. Prior to the arrest, Defendant Sugai observed that Mr. Bahena's eyes were not bloodshot, his pupils appeared normal, his speech was not slurred, and he maintained his balance without any signs of intoxication.

91. Defendant Sugai stated that he suspected Mr. Bahena was under the influence of a stimulant because Mr. Bahena spoke quickly.

92. Defendant Sugai admitted that he did not suspect Mr. Bahena of being under the influence of alcohol.

93. Nonetheless, Defendant Sugai ordered Mr. Bahena to take a breathalyzer test without probable cause to believe he was under the influence of drugs or alcohol.

94. Defendant Sugai falsely reported that he observed "a brown in color square object [on Bahena's tongue] for a moment and then it disappeared."

95. Mr. Bahena did not have anything in his mouth during the interaction, and he did not consume "a brown in color square object."

96. In fact, the chemical blood test showed that Mr. Bahena had no drugs or alcohol in his system whatsoever.

97. Defendant Sugai also falsely reported that Mr. Bahena had bloodshot eyes and dilated pupils.

98. Even though the breathalyzer test showed a 0.000 blood alcohol content, Defendant Sugai immediately arrested Mr. Bahena for Driving Under the Influence.

99. Based on his observations, Defendant Sugai knew that he did not have probable cause to arrest Mr. Bahena for DUI.

100. In addition to making false statements, Defendant Sugai failed to include exculpatory information in his warrantless arrest affidavit, including the fact that both of Mr. Bahena's breathalyzer tests showed zero alcohol in his system.

101. Defendant Curtis, a purported Drug Recognition Expert, also observed that Mr. Bahena's eyes were not bloodshot, his pupils appeared normal, his speech was not slurred, and he maintained balance without any signs of intoxication.

102. Additionally, Defendant Curtis observed that Mr. Bahena had no rebound dilation, no Vertical Gaze Nystagmus, and normal heart beat.

103. Despite making all of these observations, Defendant Curtis falsely reported that Mr. Bahena was under the influence of a central nervous system depressant.

104. Defendants Sugai and Curtis reported the above-mentioned false information while knowing that Mr. Bahena was not under the influence of a depressant, or with reckless disregard for the truth.

105. Defendant Curtis caused Mr. Bahena's prosecution and continued confinement when he falsely reported that Mr. Bahena was under the influence of a depressant.

106. Such actions by Defendants Sugai and Curtis, while acting under color of law, deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and the Colorado Constitution, including the right to be free from malicious prosecution. These deprivations caused Mr. Bahena to suffer lost liberty, an unjustified prosecution, reputational injuries, economic loss, and the damages that flowed therefrom.

**THIRD CLAIM FOR RELIEF**
*42 U.S.C. §1983 Fourteenth Amendment Violation – Equal Protection*
*(Against all Defendant Officers)*

107. Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

108. Mr. Bahena was born in Mexico, and Spanish is his primary language.

109. Mr. Bahena does not speak fluent English.

110. When Mr. Bahena spoke with Defendant Officers in English, he spoke with a heavy accent and repeatedly stated that he did not understand everything the officers were saying to him.

111. Immediately upon contacting Mr. Bahena and communicating with him, Defendants knew that Mr. Bahena was not naturalized in the United States of America.

112. Despite knowing that Mr. Bahena did not fully understand everything they were saying in English, Defendants insisted that Mr. Bahena speak English and ridiculed him for speaking Spanish.

113. Almost immediately upon making contact with Mr. Bahena, Defendant Sugai accused Mr. Bahena of having warrants, being under the influence of drugs, and possessing drugs.

114. Defendant Sugai had no articulable basis to suspect Mr. Bahena of having warrants, being under the influence of drugs, or possessing drugs.

115. Defendant Sugai did not smell an odor of any drugs; he did not observe any drugs; and he had no information suggesting that Mr. Bahena was transporting drugs.

116. Defendant Sugai knew that he was required to give the Express Consent advisement before subjecting a motorist to a breathalyzer, but Defendant Sugai did not provide this advisement to Mr. Bahena.

117. Defendant Curtis knew that he was required to get a knowing and voluntary waiver of *Miranda* rights, but he insisted that Mr. Bahena read the *Miranda* warning out loud in English.

118. Defendants Sugai and Curtis told Mr. Bahena, "We're going to do this in English" and "You're going to speak English" and "Stop speaking Spanish."

119. During the four-hour gauntlet of sobriety tests, Defendants Sugai and Curtis repeatedly, and wrongly, interpreted Mr. Bahena's difficulty with speaking English as a sign of intoxication.

120. Defendants deliberately used complex English vocabulary in order to make it more difficult for Mr. Bahena to understand, including the use of words such as "obstinate" and "articulate."

121. Defendants' decision to treat Mr. Bahena differently (e.g., by issuing baseless accusations, ridiculing him for using his native language, threatening to retaliate if he continued speaking Spanish, denying him the Express Consent advisement before subjecting him to a breathalyzer, using complex vocabulary, and arresting him for DUI without probable cause) was motivated by Plaintiff's race and/or national origin.

122. If Mr. Bahena was white, he would not have been arrested by Defendants.

123. If Mr. Bahena spoke fluent English without any accent, he would not have been subjected to the gauntlet of sobriety tests or constantly ridiculed by public officials.

124. Such actions by Defendants Sugai and Curtis, while acting under color of law, deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including the right to equal protection under the law. These deprivations caused Mr. Bahena to suffer lost liberty, an unjustified prosecution, physical injuries, reputational injuries, economic loss, and dignitary injuries.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants for: compensatory damages, as referenced above; punitive damages; interest as allowed by law; costs; expert witness fees; reasonable attorney fees, as allowed by statute or as otherwise allowed by law; and for any other and further relief that this Court shall deem just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL TRIABLE ISSUES.**

Respectfully submitted this 12th day of April, 2023.

                                  Civil Rights Litigation Group, PLLC

                                  ***s/ Zachary L. Shiffler***
                                  ***s/   Raymond K. Bryant***
                                  Zachary L. Shiffler
                                  Raymond K. Bryant
                                  1543 Champa St., Suite 400
                                  Denver, CO 80202
                                  P: 720-515-6165
                                  F: 720-465-1975
                                  Raymond@rightslitigation.com
                                  Zach@rightslitigation.com
                                  *Attorneys for Plaintiff*